MARVIN v. BOWLBY.[1]

1. DESCENT AND DISTRIBUTION—REAL ESTATE—RIGHTS OF HEIRS.
   Real estate of an intestate decedent descends directly to the
   heirs, subject, however, to the payment of intestate's debts
   and expenses of administration.

2. EXECUTORS AND ADMINISTRATORS—PAYMENT OF DEBTS—PROP-
   ERTY—ORDER OF SUBJECTION.
   An intestate's personal estate must first be exhausted in the
   payment of debts, after which so much of his real estate as
   is necessary may be applied to that purpose.

3. SAME — DISTRIBUTION OF ESTATE — LIABILITY OF HEIR TO
   ESTATE.
   An heir's distributive share of the personal estate may be ap-
   plied by the administrator in payment of a debt due the es-
   tate by such heir.

4. SAME.
   Where an heir is indebted to the estate of his intestate ances-
   tor, neither the heir's distributive share of the real estate of
   such ancestor nor the proceeds of a sale thereof in the hands
   of an administator is chargeable with such indebtedness,
   which must be collected in the same manner as other debts
   due the estate.

Appeal from Shiawassee; Smith, J. Submitted May 2,
1905. (Docket No. 132.) Decided December 15, 1905.

Bill by Thomas Marvin, administrator of the estate of
Jacob Bowlby, deceased, against Elmer E. Bowlby,
Carrie Bowlby, and Almond G. Shepard to set aside cer-
tain mortgages. From an order overruling demurrers to
the bill, defendants appeal. Reversed, and bill dismissed.

*Fred R. Everett* (*Dooling & Kelley*, of counsel), for
complainant.

*Lyon & Moinet*, for defendants Bowlby.

*Almond G. Shepard*, in pro. per.

---

[1] Rehearing denied January 24, 1906.

McAlvay, J. Complainant, as administrator of the estate of Jacob Bowlby, deceased, filed his bill of complaint against defendants, setting forth that said decedent died in Clinton county, this State, seised and possessed of real estate located in Shiawassee county, and also personal estate of the value of $1,900; that he was indebted in a large amount to creditors, and also as indorser or guarantor upon obligations due and owing by Elmer Bowlby to various creditors; that he, in the exercise of his duties as such administrator, after the allowance of claims, proceeded to pay said creditors, selling the personal property, paying all but a certain mortgage of the State Savings Bank of Ovid, leaving in his hands, after paying his fees and expenses, the sum of $57.05; that all of the heirs by agreement joined in a deed to one Theodore May of the land covered by the said mortgage to the savings bank, subject to said mortgage; that all the other lands of said estate have remained in his possession as said administrator; that defendant Elmer Bowlby was indebted to the said estate for which complainant brought suit and recovered judgment in Shiawassee circuit court, and recovered judgment from said defendant for $3,362.62, and costs taxed at $57.70, which judgment was afterwards affirmed by this court (*Marvin* v. *Bowlby*, 135 Mich. 640), with costs taxed at $61, which judgment, with costs and interest, is still owing to said estate by said defendant Bowlby; that said defendant, as an heir at law of said deceased Jacob Bowlby, is entitled to a distributive share of the estate; that said defendant and his wife have given a mortgage to defendant Almond G. Shepard for $600 upon their interest in part of the real estate of said decedent to secure attorney's fees and expenses of litigation, with full knowledge of the fact of defendant Bowlby's indebtedness to said estate, and was given and received for the purpose of hindering and delaying said complainant in collecting said indebtedness, and that, with the same intent and for the same purpose, said Bowlby and wife gave another mortgage for $1,100 to

William T. Reed, trustee, upon their interest in certain other lands of said estate; that there are no funds to pay the expenses complainant incurred in such litigation, and that, the personal estate being exhausted, to pay debts it will be necessary to sell the real estate, and said mortgages are a cloud upon the title thereto; that defendant Bowlby is insolvent and has no property to satisfy the said judgments; and that it will be necessary to apply his distributive share in said real estate upon the same. The complainant prays that the aforesaid mortgages be set aside as clouds upon his title and as hindering and delaying the sale of said lands; that the distributive share of said defendant Bowlby in said lands be applied on said judgments, and, if necessary to ascertain the value of such share, said lands may be sold.

Defendant Bowlby and wife demurred to said bill, as did also defendant Shepard, alleging as grounds of demurrer that, as a judgment creditor's bill or as a bill in aid of execution, it does not comply with the necessary requirements of law and practice; that it appears that a probate court and not a court of chancery has jurisdiction; that no case is made by the bill entitling the complainant to relief in equity. From an order overruling these demurrers, these defendants have appealed.

The bill of complaint does not on its face purport to be either a judgment creditor's bill or in aid of execution. The prayer of the bill based upon its allegations is that certain mortgages be set aside as a cloud upon complainant's title; and that the share of defendant Bowlby, as heir in the real estate of complainant's decedent, be applied upon the judgment in favor of the estate against him, and if necessary, the real estate be sold for that purpose, the share not being otherwise ascertainable.

All the questions raised upon these demurrers depend upon the main proposition—whether a court of chancery will assume jurisdiction to authorize the application of a judgment obtained by an administrator in favor of an estate against an insolvent heir at law, against the dis-

tributive share of such heir in real estate, and order sale of the real estate for that purpose. This contention is not without force, especially as it is based upon the claim that it is the only way, under circumstances similar to these in this case, that all the heirs of an estate may share equally in the estate of their intestate ancestor. It is also supported by some authority. It is well settled that real estate of the intestate decedent descends directly to the heirs, subject, however, to the payment of debts and expenses of administration. The heir does not take an absolute title to such share of the real estate for the reason that all of the estate is subject to the debts of the decedent. The personal estate must first be exhausted, and then so much of the real estate as may be necessary to satisfy such debts, and the title of the lands which descended to the heir may be completely divested. A mortgagee or grantee of an heir of his interest in such real estate will acquire no greater rights than those possessed by the heir.

It is a recognized doctrine that the distributive share due an heir from personal estate may be applied by the administrator in payment of a debt due the estate by the heir. The case of *Fiscus* v. *Moore*, 121 Ind. 547 (7 L. R. A. 235), is cited in support of complainant's contention in this case, that the same rule extends to the *real* estate of an heir. In that case all the real estate had been regularly sold by the administrator to pay debts owing by the intestate, and a surplus over remained in his hands for distribution. One of the heirs was indebted to the estate for much more than his distributive share. Moore, the mortgagee of this heir's interest in the real estate, secured an order requiring the administrator to pay him the amount of the mortgage debt out of this heir's share of such proceeds. The majority of the court held that, when land was converted into money, it became, by operation of law, money assets, subject to all the incidents of other assets, regardless of the source from which they arise; that the claim of the mortgagee was not a claim to an interest in the assets of the estate; that the mortgagee had no great-

er rights than the heir, and that the administrator had the right to apply this heir's interest in this fund upon his indebtedness to the estate; that to hold otherwise would deprive the other heirs of their right to an equal participation in the estate.

*Koons* v. *Mellett,* 121 Ind. 585 (7 L. R.. A. 231), was a case where the funds arising from the sale of real estate according to the terms of a will were in the hands of the administrator, and the same court by a majority opinion held as in the case of *Fiscus* v. *Moore,* supra.   It will be noted that these cases were not in accord with the previous decisions of that court.   See *Milligan* v. *Poole,* 35 Ind. 64; *Spray* v. *Rodman,* 43 Ind. 225; *Wilson's Ex'r* v. *Rudd,* 19 Ind. 101; *Simonds* v. *Harris,* 92 Ind. 505; *Ballenger* v. *Drook,* 101 Ind. 172.

In the majority opinion in the first case above cited the court distinguished between cases where the proceeding was to compel the payment of a distributive share from the cash proceeds of the real estate in the hands of an administrator, where the heir is indebted to the estate, and an attempt by a direct proceeding to charge a lien upon the real estate which had descended to the heir.   *Fiscus* v. *Moore,* 121 Ind. 551 (7 L. R. A. 235).

The case of *New* v. *New,* 127 Ind. 576, followed the two cases above discussed and is claimed as an authority supporting the contention of complainant in the case at bar. An extract from the opinion will show what was decided. We quote from page 586 et seq. :

" In the case of *Fiscus* v. *Moore* it was held by a majority of this court, and is now the settled law of the State, that a debt due an estate of an intestate from an heir may be retained out of his distributive share of the surplus proceeds of real estate which has been regularly sold in order to make assets to pay debts, as against one who took a mortgage pending the settlement of the estate, with knowledge of the indebtedness.   If an administrator has the right to apply money due the heir for his share of the real estate, which accidentally comes into his hands by reason of the indivisibility of real estate, so that only a

sufficient amount can be sold to pay the debts of the estate, by reason of which indivisibility the administrator is compelled to sell all the land, thereby reserving a surplus from the sale of the real estate for the payment of a debt due the estate, then the administrator certainly has the right in equity, in case no sale is made of the real estate by which a surplus comes into his hands, to have the interest of the heir applied to the payment of the debt due the estate. In that case it is said:

" ' The right of heirs to participate equally in the estate of their ancestor is superior to that of a lien holder with notice.'

" This recognizes the doctrine that there exists a right to have an equal distribution of the estate between heirs, devisees, and legatees, and for that purpose there exist, in equity, a lien and right to have such a portion of an estate, whether real or personal, as goes to the heirs applied to the payment of a debt due from the heir to the estate. In the case at bar and in like cases, the estate vested subject to the rights of the widow, and the testator contemplated an equal distribution of such portion of his estate as remained at the death of the widow between the legatees share and share alike.

"In this case the widow had full power to use such portion of the estate as necessary to supply her wants during her life, and at her death provision was made for an equal distribution of the estate remaining between the three children; before her death one obtains a portion of the funds constituting a part of the estate and executes his note for the same, which becomes a part of the assets of the estate. The portion of the real estate which George W. took by the will was subject to the payment of the judgment taken for the portion of the personal estate which he had obtained, and the executor had the right to have it subjected to sale to pay the debt, or, in the partition of the real estate, the other devisees had the right to have it treated as an advancement, so that the debtor had no interest in the real estate except the amount remaining in excess of the amount of the judgment. The executor having the right to subject the land to the payment of the judgment, the assignee also had the same rights."

The assignee in this instance was one of the heirs who, by order of the proper court, took this judgment as part of his distributive share of the estate. Although the doctrine contended for is laid down in the opinion above

quoted without qualification as a logical sequence to the decision in the case of *Fiscus* v. *Moore*, yet the decision seems to be based upon the right of the executor to subject the land to the payment of the judgment and also the right of the other heirs in a partition of the real estate to have this debt treated as an advancement. In Indiana by statute a judgment duly entered becomes a lien upon the real estate of the debtor.

In *Streety & Co.* v. *McCurdy*, 104 Ala. 493, it is held that the heirs of an estate have an equitable lien upon the distributive share in real estate of an heir who is indebted to an estate, and this lien is superior in equity to all liens of grantees or creditors of said heir, and may be enforced in equity by the other heirs, or the administrator. That court says: "This view is apparently at war with the current authority in the other States."

In *Oxsheer* v. *Nave*, 90 Tex. 568, the court recognizes also the conflict among authorities upon the proposition. This case was for the partition of community property owned by plaintiff and his deceased wife, against his children, and asking to offset the indebtedness of a son to said community estate against his interest therein. It was held that the distributive share of an insolvent debtor heir in the real estate could be applied upon his indebtedness to the estate. The court said:

" Under our statutes, the real and personal estate of an intestate descend alike to the heirs, charged with the payment of debts and subject to administration for that purpose. Both the real and personal property, when administered, are subject to distribution among the heirs in one proceeding. The debt of one of the heirs to the estate is a part of the general mass of property subject to distribution, and, if such heir fail to pay it, if more than his share, so much of it as amounts to the value of his share should be set apart to him; if less than his share, it should be taken by him in satisfaction of that share as far as it will go. This principle was applied in *Re Akerman* [L. R. 48 Ch. Div. 212]."

In this case the court, in answer to the argument that

the rule would not apply to real estate of a debtor heir which had not been converted into money, said:

"We apprehend that this makes no difference in principle, for the reason that the equity of requiring the debtor distributee is the same whether the mass to be distributed consists of property or money; and it is within the power of the courts of equity to enforce the equity as well in one case as in the other. * * * Under our statutes in relation to the estates of deceased persons, a conversion of the property, both real and personal, may become necessary upon either of two contingencies: (1) For the payment of debts; and (2) in order to bring about equality in the final distribution. In principle we see no sound distinction between the two cases."

*Donaldson's Estate*, 158 Pa. 292, was an appeal from a decree dismissing exceptions to an auditor's report in partition of an estate. The court held that the equity of payment of an heir's debt to an estate runs with the land, and the amount of the heir's indebtedness may be charged upon his share as against an execution creditor with notice that the same would be charged against said share as for an advancement. In *Gosnell* v. *Flack*, 76 Md. 423 (18 L. R. A. 158), where a trustee of an insolvent heir claimed the distributive share by right of his deed of trust, it was held that:

" The right to a distributive share is subordinate from the beginning to the distributee's indebtedness to the estate. If he is charged with the indebtedness, as he should be, he can only receive in the way of a distributive share what remains after deducting the indebtedness; in other words, his right, to claim any portion of the estate is limited to that portion, if any, which is in excess of what he owes to the estate, * * * and that the trustee was entitled to no greater rights than his grantor."

In this case the proceeds of this estate were in the administrator's hands for distribution.

The foregoing are the leading authorities to which our attention has been called, or which we have been able to find, supporting, or tending to support, complainant's contention. The leading cases holding the contrary doctrine are:

*La Foy* v. *La Foy*, 43 N. J. Eq. 206, which holds that the debt of a devisee is not a charge on lands devised to him by the testator in the absence of language in the will making such debt a charge. The court says:

"The devisee of lands occupies no such relation to the executor as that which exists between legatee and executor. No act is necessary on the part of the executor to put the devisee in full enjoyment of the estate devised. The opportunity, therefore, could not arise for the executor to retain the debt of the devisee to the estate out of any demand which the devisee might seek to enforce against the executor. If such a charge attaches against the land devised, it would be necessary for the executor to establish it by proceedings in which he is the actor. After diligent search, we have been unable to find a case in which the attempt has been made to charge a devisee of lands with a debt due from the devisee to the testator in the absence of language in the testator's will manifesting the purpose of the testator to do so. * * * In the absence of language in the testator's will to that effect, there is no authority for charging the devisee's debt upon land devised to him."

In *Smith* v. *Kearney*, 2 Barb. Ch. (N. Y.) 533, real estate had been sold to carry out the valid provisions of a will, and funds were in the hands of the executor. The creditors and assignees of an heir who was indebted to the estate, and who had acquired rights in the land before sale, claimed the distributive share of such debtor heir in such fund. After indorsing the well-settled doctrine that as to legacies the distributive share of a legatee debtor to the estate in the hands of an executor may be applied upon his indebtedness, the learned chancellor said:

"But in relation to the proceeds of that portion of the estate which descended to J. C. as one of the heirs at law of his father, this principle of the equitable retainer does not apply. That fund was not placed in the hands of the executor by the will of the testator, as personal estate, but its conversion was merely accidental. * * * It is, in equity, therefore, still to be considered real estate and as in no way connected with the fund which came to the hand of the complainant for the purposes of the will."

The same rule has always obtained in Massachusetts. A leading case is *Dearborn* v. *Preston*, 7 Allen (Mass.), 192, where an ancestor devised his real estate equally to his three sons. One of these sons afterwards conveyed his interest to the other two, and one of these conveyed his interest to a third party, who thereby became owner of an undivided one-half interest in said real estate and by petition asked partition thereof. The son who held the other one-half interest claimed that his brother, when he conveyed to petitioner, did not own a one-half interest, that the interest devised to him was chargeable with an indebtedness he owed his ancestor at the time of his decease. The court says:

" The rule of law upon the subject is so well known and established that there can be no doubt of the legal right of a devisee of real estate to take and hold it absolutely, free from any lien or charge or incumbrance as security for anything which he owed to the testator and may still owe to his legal representatives. It was very early determined that, in the division among the heirs of the real estate of a person who died intestate, no deduction would be made from the share of any one of them for or on account of any debt due from him to the intestate; and that there was no lien or charge in any form subsisting upon such share as security for such debt or which could in any way be enforced towards the payment of it. *Procter* v. *Newhall*, 17 Mass. 93. The judgment of this court in the case of *Hancock* v. *Hubbard*, 19 Pick. (Mass.) 167, declared and reaffirmed the same doctrine. And these decisions have never been doubted or brought into question, but ever since they were promulgated have been uniformly received and recognized as true and undoubted expositions of the law. The rights of the devisees to real estate, or to any share or interest therein specifically devised to them, depend, and are obviously to be determined, upon the same principle. * * * The testator may prescribe at his own pleasure the terms of his gift, and if he desires and intends to do so, he may charge and incumber the estate devised with the duty and obligation of paying any debt which shall remain due from the devisee to the testator at the time of his decease. His omission to impose any such condition unequivocally evinces an intention to make his gift absolute and unconditional. And it is a plain and

unavoidable consequence of an unrestricted and absolute devise, that the estate devised comes to the devisee entirely free from any incumbrance, or liability to be in any part appropriated to the payment or discharge of any debt which was due from him to the testator."

The doctrine that such indebtedness is no lien or charge upon the real estate of the debtor heir is applied in Tennessee; but, in order to make it a lien, the administrator must become an actor in a proper proceeding. *Mann* v. *Mann*, 12 Heisk. (Tenn.) 245; *Towles* v. *Towles*, 1 Head (Tenn.), 601. See, also, *Sartor* v. *Beaty*, 25 S. C. 293.

It is a recognized doctrine that the distributive share derived from personal property of an heir indebted to an estate may be retained by the administrator in payment of such debt. This same doctrine has also been applied to a debtor legatee by an unbroken line of authorities from the earliest English decisions to the present time. The doctrine is founded upon principle as well as upon authority. It is, in fact, the collection of a debt due the estate. Personal estate is assets in the hands of the administrator. He is required by law to convert personal property into money; to collect all debts due the estate from all debtors, including heirs. The heir has no title or claim to personal estate except a distributive share in the surplus after payment of debts and expenses of administration.

No such doctrine has prevailed as to real estate. The title to the real estate vests in the heir at the date of the death of the ancestor. Real estate is not assets in the hands of a personal representative, and, unless otherwise charged by the terms of a will, is subject only to the contingency of a sale of so much thereof as may be necessary to pay the debts of the estate in case there is not sufficient personal estate for that purpose. This statutory contingency is a modification of the common law, and no sale of real estate to pay debts of the estate could be made before this modification. It has been held repeatedly, not only that no sale of real estate can be made except for this purpose, but also that only so much of the real estate can be sold as may be necessary for that pur-

pose, and that, where because of the indivisibility of real estate the whole must be sold, the surplus by the doctrine of equitable conversion is considered as real estate, and as such goes to the heirs. There is one recognized exception to the general rule above stated. Indebtedness of the heir to the estate which may be held as an advancement may be considered in the division of real estate among heirs. The recent cases cited as supporting complainant's contention are not based upon authority. The case of *Oxsheer* v. *Nave,* 90 Tex. 568, is the only one which goes to the full extent claimed by complainant, and that case is based upon the argument in the case of *In re Akerman,* supra, wherein the court expressly stated:

· " I am not deciding a case where there is a mere gift of real estate. * * * But here I am dealing with a case such as I have mentioned, with a general fund made up of proceeds of sale of real estate, and proceeds of conversion of personal estate."

The other cases relied upon are where surplus from the real estate has been in the hands of the personal representative for distribution, and the doctrine of equitable conversion has not been recognized, or where some statutory provision has influenced the decision. The great weight of the authorities holds the contrary doctrine. We therefore hold that the distributive share of the real estate of an heir, debtor to the estate of his ancestor, is not chargeable with such indebtedness either as against the land or the proceeds of the sale thereof in the hands of the administrator; that such indebtedness is to be collected by proceedings brought the same as for collecting any other indebtedness due the estate.

The demurrers were well taken, and the order overruling the same is set aside, and a decree will be entered in this court sustaining the demurrers and dismissing complainant's bill for want of equity, with costs to defendants of both courts.

MOORE, C. J., and CARPENTER, BLAIR, and HOOKER, JJ., concurred.